Case 6:12-cv-02032-CL    Document 22    Filed 10/11/13    Page 1 of 14

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SIMAN O. HASSAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN L. COLVIN,[1] ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 6:12-cv-02032-CL <br><br> **REPORT AND RECOMMENDATION** |

James S. Coon, Swanson, Thomas, Coon & Newton, 820 S.W. 2nd Avenue, Suite 200, Portland, Oregon 97204. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Lars J. Nelson, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case. No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Siman Hassan ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") under XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision should be AFFIRMED.

## BACKGROUND

Born in Somalia in 1960, Plaintiff was 46 years old on the alleged disability onset date of January 1, 2006. Tr. 74, 164. Plaintiff came to the United States in 1996 and has past work experience as an in-home caretaker for the State of Oregon. Tr. 74-75, 175-76.

Plaintiff filed an application for SSI on December 31, 2008, alleging disability due to post-traumatic stress disorder ("PTSD"), panic attacks, syncope, heart palpitations, pain, asthma, and osteoarthritis of the right knee. Tr. 80-83, 175, 471-72. The Commissioner denied Plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 92, 98. After two administrative hearings, the ALJ issued a decision finding Plaintiff not to be disabled. Tr. 12-22, 28-89. Plaintiff's subsequent request for review was denied by the Appeals Council, making the ALJ's decision the final Agency decision. Tr. 1-3; 20 C.F.R. § 416.1481, 422.210 (2012). Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

> 1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.
>
> 2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.
>
> 3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §

>    416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, he found that Plaintiff had not engaged in substantial gainful activity after the date of her application. Tr. 14. At step two, the ALJ found that Plaintiff's PTSD to be a severe impairment, but did not find her physical conditions to be severe. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15.

Page 4 – REPORT AND RECOMMENDATION

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") and determined that Plaintiff could perform the full range of work at all exertional levels with the limitation that she perform unskilled work involving simple, repetitive tasks. Tr. 16. At step four, the ALJ found Plaintiff not capable of performing her past relevant work. Tr. 20. At step five, the ALJ found that Plaintiff retains the RFC to perform jobs existing in significant numbers in the national economy, and concluded that Plaintiff is not disabled. Tr. 21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## ANALYSIS

Plaintiff challenges the ALJ's decision, claiming that he erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony, (2) improperly evaluating the medical evidence, and (3) failing at step five to consider her mental impairments. The Court finds that the ALJ's conclusions were free of legal error and supported by substantial evidence in the record, and should therefore be affirmed.

### Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting portions of her testimony. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he

must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms ... other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility

Page 7 – REPORT AND RECOMMENDATION

finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff testified that she is unable to work due to a combination of physical and mental symptoms. Tr. 80-83. At the first hearing, Plaintiff stated that her main barriers to employment were memory loss and pain. Tr. 41. She left her employment with the State of Oregon due to dizziness, vomiting, and back pain. Tr. 78. She continues to have back pain as well as hand pain, is able to stand for only 20 minutes at a time, cannot walk even half a mile, and can sit for only 30 minutes at a time. Tr. 79. She testified that she cannot bend over, vacuum, or do laundry due to back pain and pain from abdominal surgery. *Id.* She stated that she is unable to focus on tasks and suffers from memory problems and frequent, debilitating panic attacks that occur twice a day, every day. Tr. 80.

The ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony. First, the ALJ noted inconsistencies within Plaintiff's testimony regarding the extent of her physical limitations. Tr. 19-20. Inconsistencies within the record can be a clear and convincing reason for discrediting a claimant's testimony. *See Smolen*, 80 F.3d at 1284. For example, while Plaintiff testified that she cannot walk even half a mile, she also reported that she goes for walks and enjoys shopping and walking around with her friends. Tr. 78-79, 463-64. Plaintiff testified that she can only lift a gallon of milk with her left hand and is unable to pick up anything from the floor, but also indicated that she regularly spends her days cleaning her house. Tr. 79, 463-64. These inconsistencies suggest that Plaintiff exaggerated the nature and extent of her limitations and provide a reasonable basis for the ALJ's conclusion that her testimony was not credible.

Second, the ALJ found that Plaintiff's allegations of disabling limitations were contradicted by the medical evidence. Tr. 17; *see Smolen*, 80 F.3d at 1284 (the ALJ may consider the medical evidence when evaluating a claimant's credibility). For example, the state agency consultative physicians opined that Plaintiff's physical conditions do not cause more than minimal limitations and are non-severe, thus contradicting Plaintiff's statements about the extent of her physical limitations. Tr. 297, 303, 308. With respect to Plaintiffs alleged mental limitations, evaluating psychologist Michael Leland, Psy.D., CRC, noted upon examination that Plaintiff's clinical presentation did not reflect "any significant or severe apparent psychological disorders." Tr. 465. This finding contradicts Plaintiff's testimony regarding the severity of her mental limitation, especially the alleged frequency and debilitating nature of her panic attacks. The medical evidence thus provided additional weight to the ALJ's credibility determination.[2]

Third, the ALJ found that Plaintiff's testimony was inconsistent with her activities of daily living. Tr. 18. The ALJ "may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). For example, Plaintiff reported to Dr. Leland that she is able to prepare simple meals and is generally independent in activities of daily living. Tr. 463-64. Plaintiff does some household chores, engages in social interactions with friends, and attends religious services on a regular basis. *Id.* She goes shopping with friends, manages her financial affairs, and stays in contact with family members by phone. *Id.* While the ability to assist with some household chores is not determinative of disability, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), Plaintiff's level of activity is inconsistent with her specific

---

[2] Additionally, evaluating psychologist Frank Lahman, Ph.D., noted that Plaintiff made "initial attempts to convince [him] of memory deficits that were not as extreme as presented." Tr. 310. Using ordinary techniques of credibility evaluation, it was reasonable for the ALJ to infer from the medical evidence that Plaintiff was less than fully credible. *Smolen*, 80 F.3d at 1284.

Page 9 – REPORT AND RECOMMENDATION

allegations of disabling limitations with respect to her mental functioning, memory, and physical symptoms. *See Molina*, 674 F.3d at 1113. Thus, Plaintiff's activities of daily living provide additional weight to the ALJ's credibility determination.[3]

In sum, because the ALJ made specific findings of inconsistencies within the record and explained his conclusion with respect to Plaintiff's credibility based on these inconsistencies, he provided clear and convincing reasons for rejecting her testimony.[4] *See Smolen*, 80 F.3d at 1284. The ALJ's credibility determination should be affirmed.

**Medical Evidence**

Plaintiff next argues that the ALJ erroneously rejected the opinion of consultative examining physician Dr. Ogisu. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

---

[3] In support of her argument Plaintiff cites *Ali v. Astrue*, 2012 WL 3113195 (D. Or. July, 2012), an unpublished decision from this District that reversed the ALJ's finding that the claimant was not credible. In *Ali*, however, the ALJ cited the claimant's daily activities as the sole reason for rejecting her credibility. *Id.* at *4. Here, Plaintiff's testimony was contradicted by the objective medical evidence. Thus, *Ali* is not straightforwardly analogous to this case. Even if the ALJ's reliance on Plaintiff's activities of daily living to reject her testimony was legal error, the fact that Plaintiff's testimony was contradicted by the medical record would render that error harmless. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an ALJ's error in reaching his conclusion is immaterial if he provided legally sufficient reasons supporting that conclusion).

[4] While Plaintiff alleges further error in the ALJ's reasoning, any error is immaterial because the ALJ provided legally sufficient reasons supporting his conclusion. *Carmickle*, 533 F.3d at 1162.

Page 10 – REPORT AND RECOMMENDATION

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1034.

Dr. Ogisu performed a comprehensive general examination of Plaintiff on May 10, 2011. Tr. 471. He opined that Plaintiff is capable of working at the light to medium exertional level, lifting and carrying up to 50 pounds occasionally, and standing and walking from 4 to 6 hours in an 8-hour workday. Tr. 475-77.

The ALJ rejected Dr. Ogisu's opinion, stating that it is "inconsistent with the overall medical record demonstrating that [Plaintiff's] physical complaints do not cause significant limitations and are non-severe." Tr. 19. Instead, the ALJ credited the opinions of state agency reviewing medical consultants Scott Pritchard, D.O., Linda Jensen, M.D., and Edward Yurchak, M.D. The state agency physicians opined that Plaintiff's physical impairments are non-severe and therefore assessed no physical limitations on her ability to work. Tr. 297, 303, 308. Because

Page 11 – REPORT AND RECOMMENDATION

Dr. Ogisu's opinion was controverted by the state agency physicians, the ALJ was required to provide specific, legitimate reasons for rejecting it. *Murray*, 722 F.2d at 502.[5]

As an initial matter it should be noted that Dr. Ogisu assessed physical limitations that he expected to be temporary, because they were due to Plaintiff's osteoarthritis and pain resulting from her hysterectomy. Tr. 475-78 (treatment note indicating that Dr. Ogisu did not expect Plaintiff's limitations to last longer than six months). The ALJ was not required to include these limitations in his disability analysis. *See* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). The ALJ provided specific, legitimate reasons for rejecting the relevant portions of Dr. Ogisu's opinion and should be affirmed.

The ALJ found that Dr. Ogisu's opinion was inconsistent with his own treatment notes. Tr. 19. Inconsistency with the overall medical record is a specific, legitimate reasons for rejecting a physician's opinion. *Tommasetti*, 533 F.3d at 1040. For example, Dr. Ogisu found that Plaintiff could never be around dust, odors, or fumes due to her asthma, but also noted that she had "good" control over her asthma and had not required urgent treatment since 2009. Tr. 14, 471, 474, 479. Dr. Ogisu also concluded that Plaintiff was physically limited to performing at the light to medium exertion level, yet his treatment notes reveal "mild" findings with respect to her pain, and he notes her osteoarthritis "seems to be doing fairly well." Tr. 474. Dr. Ogisu's notes from the examination also reveal that Plaintiff was able to move about without any signs of

---

[5] While Plaintiff argues in her Reply Brief that the ALJ was required to identify specific medical evidence with which Dr. Ogisu's opinion is inconsistent, the Ninth Circuit merely requires a finding of inconsistency to change the appropriate legal standard from "clear and convincing" to "specific, legitimate reasons." *See, e.g., Lester*, 81 F.3d at 830; Pl.'s R. Br. 6. Similarly, while Plaintiff correctly notes in her Reply Brief that the consultative state agency physicians' opinions cannot by themselves constitute substantial evidence, they can form the predicate for applying the "specific, legitimate reasons" standard. *See id.* at 830; *see also Stout v. Comm'r*, 191 Fed.Appx. 554, 555 (9th Cir. 2006) (the ALJ need only provide "specific and legitimate" reasons for rejecting a medical opinion that is controverted by a consultative medical expert).

Page 12 – REPORT AND RECOMMENDATION

physical difficulty, and that she maintained various postures without obvious difficulty. Tr. 473. These findings are inconsistent with Dr. Ogisu's conclusions regarding Plaintiff's physical limitations. The ALJ thus provided a specific, legitimate reason for rejecting Dr. Ogisu's opinion. *Tommasetti*, 533 F.3d at 1040. While Plaintiff argues that Dr. Ogisu's examination report is, in fact, consistent with his "ultimate opinion," the ALJ's reading of the record is rational, and should therefore be upheld.[6] *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (the ALJ's reasonable decision must be upheld even if the evidence "is susceptible to more than one rational interpretation"); *see also Sample*, 694 F.2d at 642; Pl.'s R. Brief, 6.

**Step Five Findings**

Plaintiff argues that the ALJ erred at step five in finding that her mental impairments "do not significantly affect" her ability to work. Tr. 21; Pl.'s Br. at 13; Pl.'s R. Br. at 16. In effect, Plaintiff restates her arguments that the ALJ erroneously excluded evidence of Plaintiff's limitations. Because the ALJ's assessment of Plaintiff's testimony and the medical evidence was supported by substantial evidence, his step five findings were not error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). The ALJ's step five findings should be affirmed.

## RECOMMENDATION

The ALJ provided legally sufficient reasons for rejecting Plaintiff's credibility and for rejecting the opinion of Dr. Ogisu, and therefore did not err at step five. Thus, the decision that Plaintiff is not disabled is supported by substantial evidence in the record and should be AFFIRMED.

---

[6] While Plaintiff again alleges further error in the ALJ's reasoning, any error is, as noted, immaterial because the ALJ provided legally sufficient reasons supporting his conclusion. *Carmickle*, 533 F.3d at 1162.

Page 13 – REPORT AND RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. **Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections.** *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this __11__th day of October, 2013.

Mark D. Clarke
United States Magistrate Judge